**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| LIMBACH COMPANY, LLC, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: 14-cv-01418 (RC) |
| | : | |
| v. | : | Re Document Nos.: 6, 7, 9 |
| | : | |
| TEN HOEVE BROTHERS, LLC, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

## I. INTRODUCTION

This action arises out of a contractual dispute in which Limbach Company, LLC

("Plaintiff") brought suit alleging that Ten Hoeve Brothers, LLC ("Defendant") failed to perform

its contractual obligations. After Defendant failed to respond to the complaint, Plaintiff moved

for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). Because Plaintiff has

met its evidentiary burden, the Court grants Plaintiff's motion for default judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On November 18, 2011, the District of Columbia government entered into a contract with

Smoot/Gilbane Joint Venture ("General Contractor") for construction work at Dunbar Senior

High School. Pl.'s Compl. ¶ 7, ECF No. 1. On or about January 30, 2012, the General

Contractor entered into a subcontract with Plaintiff to complete certain work, including plumbing

infrastructure, on the project. *Id*. ¶ 8. On or about October 13, 2012, Plaintiff entered into a sub-

subcontract with W.L. Gary Company, Inc. ("Gary Co.") for the completion of certain plumbing

work.  *Id.* ¶ 9.  On or about November 12, 2012, Gary Co. entered into a sub-sub-subcontract with Defendant.  *Id*. ¶ 10.

The sub-sub-subcontract obligated Defendant to, among other things, install a rainwater harvesting system consistent with the specifications set forth in the prime contract.  *Id.* ¶ 10.  The prime contract, incorporated through the subcontracts, required that the rainwater harvesting system include the installation of a KriStar FloGard Dual Vortex catch basin and required that no used plumbing fixtures be employed in the installation.  *Id.* ¶ 10; Pl.'s Supplemental Br. and Mot. ECF Nos. 9-2, 9-3.  Gary Co. agreed to pay Defendant $316,000.00 for the work.  Pl.'s Supplemental Br. and Mot. 17, ECF No. 9-5.  A change order increased the contract price to $333,104.00.  Craig Sasser Aff. ¶ 18, ECF No. 6..  As part of its contractual obligations, Defendant entered into purchase and/or service agreements with several vendors.  Pl.'s Compl. ¶ 13, ECF No. 1.

In September 2013, Plaintiff and Gary Co. discovered that Defendant had installed a non-conforming system and that Defendant had failed to pay any of the vendors.  Pl.'s Supplemental Br. and Mot. 3, ECF No. 9.  On November 5, 2013, Plaintiff sent a letter of default demanding that Defendant correct the non-conformities and pay the vendors.  *Id.*; Pl.'s Supplemental Br. and Mot., ECF No. 9-7.  Receiving no response, on November 19, 2013, Plaintiff sent Defendant a letter terminating the contract.  Pl.'s Supplemental Br. and Mot., ECF No. 9-8.  On or about July 14, 2014, Plaintiff and Gary Co. entered into an agreement assigning from Gary Co. to Plaintiff all rights of action against Defendant.  Pl.'s Supplemental Br. and Mot., ECF No. 9-9.  In addition, Plaintiff satisfied the outstanding claims by the vendors.  Pl.'s Compl. ¶ 17, ECF No. 1.  Plaintiff then resolved to the satisfaction of the general contractor all issues related to Defendant's alleged breach of contract.  *Id.* ¶ 18.

On August 20, 2014, Plaintiff filed a complaint against Defendant alleging breach of contract and, in the alternative, fraud and negligent misrepresentation. Pl.'s Compl., ECF No. 1. Plaintiff served Defendant pursuant to D.C. Code § 29-104.12(d).[1] On December 11, 2014, because of Defendant's failure to respond to the complaint, the Clerk of Court entered default against Defendant pursuant to Federal Rule of Civil Procedure 55(a). Clerk's Entry of Default, ECF No. 5. On April 20, 2014, Plaintiff moved the Court, pursuant to Federal Rule of Civil Procedure 55, to enter default judgment against Defendant in the amount of $234,192.46. Pl.'s Mot. Default J. 1, ECF No. 7. On June 1, 2015, Plaintiff was ordered to submit supplemental briefing and evidence. Order, ECF No. 8. Plaintiff has complied with the order and now moves for an entry of default judgment against Defendant pursuant to Federal Rule of Civil Procedure 55(b)(2). Pl.'s Supplemental Br. and Mot. 12, ECF No. 9.[2]

### III.    LEGAL STANDARDS

"A default judgment establishes the defaulting party's liability for every well-pled allegation in the complaint. A default judgment, however, does not automatically establish liability in the amount claimed by the plaintiff." *Int'l Painters & Allied Trades Indus. Pension Fund v. Newburgh Glass and Glazing, LLC*, 468 F. Supp. 2d 215, 217 (D.D.C. 2007) (internal citations omitted). "The determination of whether default judgment is appropriate is committed to the discretion of the trial court." *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier*

---

[1] Plaintiff was unable to locate Defendant's agent for service within the District of Columbia and mailed a waiver of service to the address of Defendant's registered agent in Connecticut. Jeffrey Seaman Decl. ¶¶ 1–2, ECF No. 3. The waiver of service was returned, and Plaintiff served the Commissioner of Corporations for the District of Columbia, who, pursuant to D.C. Code § 29-104.12(d), became the agent for service of the Defendant. *Id*. ¶¶ 2–4. Accordingly, service of process was adequate. *See Central Ins. Agency Co. v. Fin. Credit Corp.*, 222 F. Supp. 627, 629 (D.D.C. 1963) (upholding service upon the Commissioner of Corporations pursuant to D.C. § 29-104.12(d) as valid service of process upon the defendant).

[2] Docket number 6 contains Plaintiff's affidavits supporting its motion for default judgment; docket number 7 contains Plaintiff's motion for default judgment; and docket number 9 contains Plaintiff's supplemental brief and documentary evidence. For simplicity, the Court will consider documents 6, 7, and 9 collectively as constituting Plaintiff's motion and attachments. *See* ECF Nos. 6, 7, 9.

*Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980). The Court "is required to make an independent determination of the amount of damages to be awarded, unless the amount of damages is certain." *Serv. Emps. Int'l. Union Nat. Indus. Pension Fund v. Artharee*, 942 F. Supp. 2d 27, 30 (D.D.C. 2013) (citations omitted).

In determining the amount of damages, a court is not required to conduct an evidentiary hearing as long as the court ensures that there is "a basis for the damages specified in the default judgment." *Boland v. Elite Terrazzo Flooring, Inc.*, 763 F. Supp. 2d 64, 67 (D.D.C. 2011) (citations omitted). In ruling on a motion for default judgment "the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum . . ." *Int'l Painters and Allied Trades Indus. Pension Fund. v. R.W. Amrine Drywall Co., Inc.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002) (citation omitted).

## IV.    ANALYSIS

"Contract damages are intended to give the injured party the benefit of his bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as he would have been had the contract been performed." *Vector Realty Grp., Inc. v. 711 Fourteenth Street, Inc.*, 659 A. 2d 230, 234 n. 8 (D.C. 1994) (citing Restatement 2d of Contracts, § 347 (1981)). "Where a party fails to complete a service which it agreed to perform under a contract, the non-breaching party is entitled to receive the amount it *costs to complete the service*, to the extent that amount exceeds the original contract price." *Rowan Heating-Air Conditioning-Sheet Metal, Inc. v. Williams*, 580 A.2d 583, 585 (D.C. 1990) (emphasis added) (relying on *Thorne v. White*, 103 A.2d 579, 580 (D.C. 1954)). The "costs to complete the service" includes both any payments made under the original contract and any expenses incurred in procuring the substitute performance. *Id.*

The Court now applies the above principles to the record in this case. Plaintiff has established through evidence that the "costs to complete the services" not performed by Defendant amounted to $560,896.45 – the sum total of payments on the original contract ($260,315.06) and expenses incurred in procuring substitute performance ($300,581.39). *Id.*[3] The price of the original contract was $333,104.00. Craig Sasser Aff. ¶ 18, ECF No. 6. Plaintiff is therefore entitled to the difference between the payments made obtaining completed service ($560,896.45) and the original contract price ($333,104.00): $227,792.45. *See Rowan*, 580 A.2d at 585 (holding that the non-breaching party is entitled to the amount exceeding the original contract price).[4]

In addition, Plaintiff requests costs and fees incurred in the prosecution of this action. Pl.'s Supplemental Br. and Mot., ECF No. 9 at 12. Under Federal Rule of Civil Procedure 54(d), the prevailing party is presumptively entitled to costs. *See* Fed. R. Civ. P. 54(d). Plaintiff is therefore entitled to those costs it submits to the Clerk of Court that are covered by 28 U.S.C.

---

[3] Plaintiff paid Pipeway Energy Construction, Inc. $81,900.00 for the removal of the non-conforming pre-filter, shoring of necessary excavation, and installation of the KriStar filter. ECF No. 9-11. Plaintiff paid Concrete Pipe and Precast $22,000.00 for delivery of the KriStar filter. ECF No. 9-13, 9-14, 9-15. Plaintiff expended $2,190.78 for PVC pipe fittings and pumps used in the installation of the filter. ECF No. 9-16. Plaintiff expended $35,834.00 in labor for the removal of the non-conforming catch basin and the installation of the proper basin. ECF No. 9-17. Plaintiff spent $10,211.00 on crane and shoring installation for the catch basin tank. ECF No. 9-18, 9-19. Plaintiff expended $773.00 on the repair of broken underground conduits. ECF No. 9-20, 9-21. Plaintiff spent $4,173.46 on the replacement of a used backflow preventer. ECF No. 9-23, 9-24. Plaintiff's assignor, Gary Co. spent $24,453.00 in labor assisting with the removal and replacement work. ECF No. 9-25. Plaintiff spent $1,750.00 to purchase a conforming hydro tank. ECF No 9-27. Plaintiff spent $15,418.53 commissioning labor to complete Defendant's punch-list. ECF No. 9-30. Plaintiff paid $14,664.00 to Stone Shooters, Inc. for the delivery of stone to be used on the project. ECF No. 9-32. Plaintiff paid $16,577.00 to Crane Service Company. ECF No. 9-35. Plaintiff paid $50,636.62 to K&K Adams, Inc. for the rental of excavation equipment. ECF No. 9-36. Plaintiff paid $20,000.00 to Icon Equipment Distributors, Inc. ECF No. 9-39.

[4] There are three discrepancies between figures contained in the Sasser affidavit, on the one hand, and those provided in the supplemental briefing and supporting exhibits, on the other—the costs for labor, the backflow preventer, and the punchlist completion and system commissioning differ. Rather than follow the affidavit's figures, the Court has used the figures substantiated by Plaintiff's supporting exhibits. *See Int'l Painters & Allied Trades Indus. Pension Fund.*, 239 F. Supp. 2d at 30. Discrepancies in certain figures notwithstanding, the *methodology* adopted in the Sasser affidavit is fully consistent with the Court's calculations, as evinced by the amount specified in the affidavit's conclusion and the appended proposed judgment—$234,192.46, which would be consistent with the Court's result but for the three discrepancies explained above. To the extent that Plaintiff's supplemental brief requests $300,511.49, the Court construes this figure as an inadvertent misstatement. *See* Pl.'s Supplemental Br. and Mot., ECF No. 9 at 12.

§ 1920. Attorneys' fees, however, are not ordinarily awardable absent a contractual or statutory provision providing otherwise. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257 (1975). Because Plaintiff has failed to allege any statutory or contractual basis for an award of fees, the Court declines to award attorneys' fees.

## V.     CONCLUSION

Because Plaintiff has provided evidence in the form of affidavits and documentation substantiating all of its claims, Plaintiff's Motion for Default Judgment is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.


Dated:  September 2, 2015                                    RUDOLPH CONTRERAS
                                                            United States District Judge